**FILED - GR**
May 4, 2026 2:13 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: JW  /S-S

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Western District of Michigan

Southern Division

**1:26-cv-1471**
**Paul L. Maloney**
**United States District Judge**

ROOSEVELT LASHAWN WILLIAMS(ESTATE)
Roosevelt-Lashawn of the Williams Family (Trustee) )
)
)
*Plaintiff(s)* )
*(Write the full name of each plaintiff who is filing this complaint.* )
*If the names of all the plaintiffs cannot fit in the space above,* )
*please write "see attached" in the space and attach an additional* )
*page with the full list of names.)* )
-v- )
)
GOOGLE CORPORATION, FACEBOOK )
META/DAVID CRASH PARTAIN, CITY-DATA.COM )
)
)
*Defendant(s)* )
*(Write the full name of each defendant who is being sued.  If the* )
*names of all the defendants cannot fit in the space above, please* )
*write "see attached" in the space and attach an additional page* )
*with the full list of names.)*

Case No. _____

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☐ Yes ☑ No

## COMPLAINT FOR A CIVIL CASE

I.    **The Parties to This Complaint**

   A.    **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | ROOSEVELT LASHAWN WILLIAMS (ESTATE) |
| Street Address | c/o 554 BOYNTON |
| City and County | BENTON HARBOR COUNTY OF BERRIEN |
| State and Zip Code | MI 49022 Under Necissity |
| Telephone Number | 2698496112 |
| E-mail Address | menoflightorganization@gmail.com |

   B.    **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

    Name                      GOOGLE CORPORATION

    Job or Title *(if known)*

    Street Address           1600 AMPHITHEATRE PARKWAY

    City and County        MOUTAIN VIEW

    State and Zip Code     CALIFORNIA 94043

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2

    Name                      CITY-DATA.COM

    Job or Title *(if known)*

    Street Address           3 GRANT SQUARE #263

    City and County        HINSDALE

    State and Zip Code     ILLINOIS 60521-3351

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name                      FACEBOOK META

    Job or Title *(if known)*

    Street Address           1 HACKER WAY

    City and County        MENLO PARK

    State and Zip Code     CALIFORNIA 94025

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question          ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
PLEASE SEE ATTACHED

### B.   If the Basis for Jurisdiction Is Diversity of Citizenship

1.   The Plaintiff(s)

a.   If the plaintiff is an individual

The plaintiff, *(name)*   Roosevelt-Lashawn of the Williams Family (tru , is a citizen of the State of *(name)*   Michigan

b.   If the plaintiff is a corporation

The plaintiff, *(name)*   ROOSEVELT LASHAWN WILLIAMS (ESTATE , is incorporated under the laws of the State of *(name)*   MI                                                          ,

and has its principal place of business in the State of *(name)*

MI                                                                      .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

a.   If the defendant is an individual

The defendant, *(name)*   PLEASE SEE ATTACHED                   , is a citizen of the State of *(name)*                                     . Or is a citizen of *(foreign nation)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

      b.     If the defendant is a corporation

          The defendant, *(name)*   PLEASE SEE ATTACHED    , is incorporated under

          the laws of the State of *(name)*                 , and has its

          principal place of business in the State of *(name)*

          Or is incorporated under the laws of *(foreign nation)*

          and has its principal place of business in *(name)*

          *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.     The Amount in Controversy

          The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
          PLEASE SEE ATTACHED

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.
PLEASE SEE ATTACHED

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.
PLEASE SEE ATTACHED

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   *May 1, 2026*

Signature of Plaintiff   *[signature] UCC951308*

Printed Name of Plaintiff   *ROOSEVELT LASHAWN WILLIAMS (ESTATE*

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

# UNITED STATES DISTRICT COURT

## FOR THE

## WESTERN DISTRICT OF MICHIGAN

ROOSEVELT LASHAWN WILLIAMS (ESTATE)
    PLAINTIFF

Roosevelt-Lashawn of the Williams Family (Trustee\Executor)
    Third Party Plaintiff

v.

                                HONORABLE JUDGE: _____
                                CASE NO.: _____

GOOGLE, FACEBOOK META/DAVID
CRASH PARTAIN, CITY DATA.COM
    DEFENDANT(S)

_____/

# VIOLATION OF INTELLECTUAL PROPERTY RIGHTS TORT CLAIM

## ORAL ARGUMENTS REQUESTED

This Court, pursuant to 28 U.S.C § 1331; 28 U.S.C § 1332; 28 U.S.C § 1367 and/or *Article III § 2* of the *united States of America Constitution* has jurisdiction over the matter(s) stated herein.

## *ISPO FACTO AVERMENT(S)*

1) On the Fifth Day of May, in the Year of Our LORD Two Thousand Twenty-Five, along with numerous of other occasions, GOOGLE CORPORATION, located at 1600 AMPHITHEATRE PARKWAY, MOUNTAIN VIEW, CALIFORNIA 94043, via e-mail was given due and sufficient notice of being in violation of numerous of violation(s), to include but not limited to the unauthorized use of the INTELLECTUAL PROPERTY belonging to Roosevelt-Lashawn of the Williams Family, with clear instruction(s) to cease and desist any further unauthorized use of said INTELLECAL PROPERTY, along with removing said INTELLECTUAL PROPERTY from said CORPORATION'S database, and the Third-Party Plaintiff having a perfected security interest to/of/in the property being used. (See EXHIBIT (A) "PRIVACY ACT OF 1974 VIOLATION NOTICE")

2) On the Sixteenth Day of October, in the Year of Our LORD, Two Thousand Twenty-Five, GOOGLE CORPORATION acknowledged receiving said notice as witnessed by the attached response to which said violation(s) continuously to intentionally occur. (See EXHIBIT(S) (B) "GOOGLE CORPORATION'S E-MAIL RESPONSE(S) and SCREENSHOT")

3) On numerous of occasions CITY-DATY.COM, located at 3 GRANT SQUARE #263, HINSDALE, ILLINOIS 60521-3351, via the "CITY-DATA.COM Forum Personal Information Listing Removal Request" due and sufficient notice was indeed given of being in violation of: a) INTELLECTUAL PROPERTY RIGHT LAWS via the unauthorized use via publication of the Third-Party Plaintiff's private intellectual property without the owner's consent, b) VIOLATION OF PRIVACY RIGHTS as secured via the *united States of America Constitution* via the publication of the Third Party Plaintiff's personal information (i.e. address) without the owner's consent, c) the Third-Party Plaintiff having a perfected security interest to/of/in said property being used, and d) violation of numerous of MICHIGAN COMPLIANCE LAW(S), FEDERAL LAW(S) and the *united States of America Constitution*, requesting that said violation(s) be rectified by ceasing and desisting in any further unauthorized use of the Third-Party Plaintiff's *INTELLECTUAL PROPERTY* and removing said private property from his/her/their website

4) On the Fourteenth Day of March, in the Year of Our LORD Two Thousand Twenty-Six, along with numerous of other notices, has been given to FACEBOOK META, located at 1 HACKER WAY, MENLO PARK, CALFORINA 94025 of being in violation of numerous Right(s), Policy(ies), MICHIGAN COMPLIANCE LAW(S), FEDERAL LAW(S)....etc., via FACEBOOK META and user(s) of FACEBOOK META commercial platform. FACEBOOK META has constantly responded that no policy [n]or LAW(S) are being violated. (See EXHIBITD (D) "Acknowledgment of complaint of unauthorized image use,"; "E-Mail response to unauthorized intellectual property use," and one of the many FACEBOOK META pages where users are being allowed to violate FACEBOOK META privacy policy and intellectual property right law(s).)

**I)   DOES THE DEFENDANT(S) ACTION(S) VIOLATE THE uNITED STATES OF AMERICA CONSTITUTION, STATE OF MICHIGAN CONSTITUTION, AND COMMERCIAL LAW(S)**

**PLAINTIFF SAYS: YES**
**DEFENDANT SAYS:**

## Fifth Amendment of the united States of America Constitution states:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

The Michigan Constitution of 1963 contains provisions on the seizure of private property in **Article X, Section 2**, which addresses eminent domain and compensation.

**Article X, Section 2** states:

"Private property shall not be taken for public use without just compensation, therefore being first made or secured in a manner prescribed by law. If private property consisting of an individual's principal residence is taken for public use, the amount of compensation made and determined for that taking shall be not less than 125% of that property's fair market value, in addition to any other reimbursement allowed by law. Compensation shall be determined in proceedings in a court of record. 'Public use' does not include the taking of private property for transfer to a private entity for the purpose of economic development or enhancement of tax revenues. Private property otherwise may be taken for reasons of public use as that term is understood on the effective date of the amendment to this constitution that added this paragraph. In a condemnation action, the burden of proof is on the condemning authority to demonstrate, by the preponderance of evidence, that the taking of a private property is for a public use, unless the condemnation action involves a taking for the eradication of blight, in which case the burden of proof is on the condemning authority to demonstrate, by clear and convincing evidence, that the taking of that property is for a public use. Any existing right, grant, or benefit afforded to property owners as of November 1, 2005, whether provided by this section, by statute, or otherwise, shall be preserved and shall not be abrogated or impaired by the constitutional amendment that added this paragraph."

**440.9102 Definitions and index of definitions.**
Sec. 9102.

(1) As used in this article: ......

(l) "Collateral" means the property subject to a security interest or agricultural lien. The term includes 1 or more of the following:

(i) Proceeds to which a security interest attaches.

(ii) Accounts, chattel paper, payment intangibles, and promissory notes that have been sold.

(iii) Goods that are the subject of a consignment.

(m) "Commercial tort claim" means a claim arising in tort with respect to which of the following applies:

(i) The claimant is an organization.

(ii) The claimant is an individual and the claim arose in the course of the claimant's business or profession and does not include damages arising out of personal injury to or the death of an individual.

(v) "Consumer debtor" means a debtor in a consumer transaction.

(w) "Consumer goods" means goods that are used or bought for use primarily for personal, family, or household purposes.

(x) "Consumer-goods transaction" means a consumer transaction in which an individual incurs an obligation primarily for personal, family, or household purposes and a security interest in consumer goods secures the obligation.

(y) "Consumer obligor" means an obligor who is an individual and who incurred the obligation as part of a transaction entered into primarily for personal, family, or household purposes.

(z) "Consumer transaction" means a transaction in which an individual incurs an obligation primarily for personal, family, or household purposes, a security interest secures the obligation, and the collateral is held or acquired primarily for personal, family, or household purposes. The term includes consumer-goods transactions.

(aa) "Continuation statement" means an amendment of a financing statement which identifies, by its file number, the initial financing statement to which it relates and indicates that it is a continuation statement for, or that it is filed to continue the effectiveness of, the identified financing statement.

(bb) "Debtor" means 1 of the following:

(i) A person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor.

(pp) "General intangible" means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software.

## 440.9310 When filing required to perfect security interest or agricultural lien; security interests and agricultural liens.

Sec. 9310.

(1) Except as otherwise provided in subsection (2) and section 9312(2), a financing statement must be filed to perfect all security interests and agricultural liens

## 440.9109 Scope.
Sec. 9109.

(1) Except as otherwise provided in subsections (3) and (4), this article applies to all of the following:

(a) A transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract.

Article 9 of the UCC and Intellectual Property

Article 9 of the Uniform Commercial Code (UCC) governs secured transactions in **personal property**, including **general intangibles** such as patents, trademarks, copyrights, and other intellectual property (IP) rights  Under UCC Article 9, IP is treated as a form of personal property that can be used as collateral in secured financing arrangements.

How IP Fits Under Article 9

General Intangibles: UCC Article 9 defines "general intangibles" as personal property that is not tangible, such as contractual rights, licenses, and IP rights

Licensing Agreements: Both exclusive and non-exclusive licenses of IP are considered personal rights under UCC, which can be the subject of a security interest

Collateralization: Because IP can be valuable and tradable, lenders may seek to secure loans or other obligations by taking a security interest in IP rights

Perfecting a Security Interest in IP

To perfect a security interest in IP under Article 9:

State Filing: A UCC-1 financing statement must be filed with the Secretary of State in the state where the debtor resides, describing the collateral (e.g., the IP right)

Federal Preemption: For certain IP types (e.g., U.S. patents, registered trademarks, registered copyrights), federal law may preempt state UCC filings.

UCC Article 9 and Intellectual Property

Article 9 of the Uniform Commercial Code (UCC) governs secured transactions in personal property, including intellectual property (IP) rights such as patents, copyrights, and trademarks, when those rights are treated as "general intangibles" under UCC definitions.

How Article 9 Applies to Intellectual Property

Under UCC Article 9, a security interest in IP is created when:

The debtor has rights in the collateral (e.g., a patent, copyright, or trademark).

There is an authenticated security agreement describing the IP. The value is given (e.g., a loan is made) IP rights are generally classified as **general intangibles** under UCC § 9-102, which are personal property interests that can be the subject of a security interest

Article 9 of the Uniform Commercial Code (U.C.C) is the primary section pertaining to intellectual property (IP) rights, specifically governing security interests in intangibles like patents, trademarks, and copyrights. It enables lenders to take security interests in IP assets as collateral. Additionally, Article 2B (often proposed or adopted in part) covers licensing, while Article 2 governs goods, not intellectual property itself.

Article 9 (Secured Transactions): Governs the creation and perfection of security interests in intellectual property, which are generally categorized as "general intangibles ".
Perfection: Security Interest in patents, trademarks, and copyrights are often perfected under Article 9.

In summary: Article 9 of the UCC allows IP rights to be treated as personal property and used as collateral. Lenders can perfect security interests in IP through UCC filings, but for certain rights, federal law may require additional or alternative filing procedures to ensure priority

FACEBOOK META and GOOGLE CORPORATION are commercial based platforms that has policies in place that are supposed to protect consumers rights, each one has been given due and sufficient notice(s) of the violation(s) being committed by users (i.e. "Citizen To Police Calhoun," "CITY-DATA.COM"....etc.)   on their platform and refuses to enforce the rights of the consumer(s) and intentionally ignores all notice(s) and request to remove any and all unauthorized uses of intellectual property that the owner of such property has not given permission to be used by anyone (e.g. Lexus Nexus, Justia Law, Govinfo,...etc.) to include but not limited to any GOVERMENT AGENT(S), GOVERNMENT AGENCIES, COURTS or the likes thereof, to publish, print, display, reproduce use or the likes thereof any of the Plaintiff(s)' Private Intellectual Property.

**II) DOES THE DEFENDANT(S) ACTION(S) VIOLATE THE PLAINTIFF(S) INTELLECTUAL PROPERTY RIGHT(S), ARTICLE 1 § 8 OF THE uNITED STATES OF AMERICA CONSTITUTION, FEDERAL LAW(S) AND MICHIGAN STATE LAW(S)**

**PLAINTIFF(S) SAYS: <u>YES</u>**
**DEFENDANT(S) SAYS: _____**

The Copyright Act of 1976 (Pub. L. 94-553) overhauled U.S. copyright law, establishing the current framework in Title 17. Effective January 1, 1978, it automatically protects original works of authorship fixed in a tangible medium, granting creators exclusive rights (reproduction, distribution, performance) for the author's life plus 50 years (now generally 70).

Key provisions of the 1976 Act include:

Fixed in Tangible Medium: Protection exists the moment a work is written down, recorded, or otherwise captured, regardless of whether it is published or registered.
Exclusive Rights: Owners hold rights to reproduce, distribute, perform, display, and create derivative works based on their original, copyrighted material.

Fair Use Doctrine: Codified for the first time, Section 107 permits limited use of copyrighted material without permission for purposes like criticism, comment, news reporting, teaching, or research.

Duration: The law extended terms to the life of the author plus 50 years (later extended), and for "works made for hire," 75 years from publication (now 95 years).
Subject Matter: Protection covers literary, musical, dramatic, choreographic, pictorial, graphic, sculptural, and audiovisual works.

Distinction Between Idea and Expression: The Act protects the specific expression of a work, not the underlying ideas, procedures, or methods.

Preemption: The act eliminated common law copyright for unpublished works, establishing a single federal system.

The Act was designed to adapt to new technologies, such as photocopying and cable television, by providing mechanisms for compulsory licenses, and it aligned U.S. law with international standards like the Berne Convention.

In Vidal v. Elster (2024), the US Supreme Court unanimously upheld the Lanham Act's requirement that a living person's name cannot be registered as a trademark without their

written consent. The decision confirms that, when using a person's identity in commerce for branding, prior consent is generally required.

Key details regarding the Vidal v. Elster case:

The Issue:
Steve Elster attempted to register the trademark "Trump Too Small," which was rejected by the Patent and Trademark Office because it used Donald Trump's namewithout his consent.

The Ruling:
The Court decided that the "names clause" (§1052 of the Lanham Act) does not violate the First Amendment, affirming it is not viewpoint discrimination to prohibit the commercial use of a person's name without their consent.

Scope:
The ruling reinforces common-law principles that individuals have rights over their own names in commerce.

This decision confirms that trademark law protects individuals from having their names used by others without permission

The Plaintiff(s)'has, in accordance with applicable law(s) perfected a security interest in his Intellectual Property and the rights thereof, to which no consent has been given to any GOVERNMENT ENTITY, GOVERNMENT AGENT(S)/ANGENCY(IES). Private Individuals or the likes thereof to print, publish, advertise and/or use in commerce or otherwise. (See EXHIBIT(S) (A) and (E) filed "U.C.C-1 FINANCING STATEMENT")

Allowing other users to post unowned Intellectual Property without the owner's consent on the FACEBOOK META and GOOGLE CORPORATION commercial platform is a clear violation of the above cited laws and FACEBOOK META and GOOGLE CORPORATION PRIVACY POLICY.

In Vidal v. Elster (2024), the Supreme Court upheld Section 2 of the Lanham Act, affirming that a person's name can be protected as intellectual property (and denied to others for trademarking) based on reputation, without requiring that specific name to be used actively by that person in commercial, for-profit activity.

Vidal v. Elster (2024) centered on the registration of "TRUMP TOO SMALL." The Court recognized that the "names clause" of the Lanham Act protects a person's interest in their own name, protecting their reputation regardless of whether the specific name usage is commercial.

San Francisco Arts & Athletics, Inc. v. United States Olympic Comm. (1987) noted that a mark can acquire value (property status) through labor and skill, not solely through traditional commercial use.

The Court emphasized that the "names clause" respects the connection between a trademark and the protection of a person's reputation.

Article I § 8 Enumerated Powers Clause 8 Intellectual Property
To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;

Article 1§ 8 Cl.8

Article 1§ 8, Cl. 8 of the united States of America Constitution (the "Intellectual Property Clause") empowers Congress to promote scientific and artistic progress by granting authors and inventors exclusive rights to their writings and discoveries for limited times. This clause forms the legal basis for U.S. patent and copyright laws.

Key Aspects of the Clause:
Purpose: The clause explicitly states its utilitarian purpose is "To promote the Progress of Science and useful Arts".

Copyrights: Protects authors' original writings.

Patents: Protects inventors' new discoveries.

Limitations: Rights must be for "limited Times" (not perpetual).
Interpretation: While "science" meant all knowledge, "useful arts" historically referred to manufacturing crafts.

Trademarks: This clause is generally not the basis for trademarks; they are governed by the Commerce Clause

Based on Michigan Compiled Laws (MCL), specifically regarding the Commercial Rehabilitation Act, MCL 390.1554(1)(a) is cited in legal proceedings to protect materials as "Intellectual property," including research, designs, and potentially images or visual works within that context. For general copyright protection, photos are protected by federal law, not typically a specific MCL.

Key details regarding intellectual property and images in Michigan include: MCL 390.1554(CRIIA): Refers to intellectual property exemptions in the context of research and university-related materials.

Right of Publicity: Michigan common law and statutes (like those regarding commercial misappropriation) protect an individual's likeness in images, often considered a form of intellectual property

In Michigan, common law intellectual property (IP) rights arise from judicial decisions and precedent rather than statutes. These rights are recognized alongside, and often supplement, statutory IP laws enacted by state and federal legislatures.

Common Law IP in Michigan Definition: Common law is law developed through court decisions, which supplements statutory laws passed by the legislature.

Common Law Trademarks: The most significant common law IP right in Michigan is the trademark. A business that is the first to use a trademark in a specific geographic area receives rights, even if not registered.

"Appropriation" Tort: Michigan courts recognize a common law "appropriation" tort,which provides protection against unauthorized use of a person's identity, often serving as a substitute for a statutory right of publicity.

Scope: Common law rights typically apply only within specific geographic areas.

Recognition Along Statutory Law Trade Secrets: The Michigan Uniform Trade Secrets Act (MUTSA) protects confidential business information, complementing common law protections.

Concurrent Use: Common law trademarks can exist alongside federal (Lanham Act) and state-registered trademarks, with the first user often prevailing.

Statutory Displacement: Common law norms apply where they are not displaced by later statutory enactments, binding Michigan courts to honor judge-made principles until repealed by the legislature

In Michigan, intellectual property rights, including common law protections against unfair competition, are often addressed in MCL 570.547, which preserves state law rights regarding tools and unfair competition. Additionally, MCL 390.1554 protects intellectual property (including trade secrets) created by or in the possession of public universities.

Key Michigan Compiled Laws (MCL) regarding Intellectual Property:

MCL 390.1552-390.1554(Confidential Research and Investment Information Act): Defines and protects intellectual property, trade secrets, and proprietary information held by universities.

MCL 570.547: Deals with the transfer of rights for special tools but explicitly states it does not affect rights under federal patent/copyright law or state/federal law pertaining to unfair competition.

While federal law governs registered patents and copyrights, common law intellectual property rights in Michigan generally relate to trade secrets, unregistered trademarks, and unfair competition laws.

Common law intellectual property rights in Michigan, such as unregistered trademarks, are generally recognized under state-level statutes that define property ownership and remedies for infringement. Specific statutes like Act 242 of 1969 (modeled after the Lanham Act) govern marks, while MCL 390.1552 defines intellectual property within the context of research, and the Revised Judicature Act (MCL 600.8031) provides mechanisms for handling intellectual property cases.

Trademarks/Service Marks: Act 242 of 1969 covers registration and protection, including common law rights that may exist prior to state registration.

Intellectual Property Definition: MCL 390.1552 defines intellectual property as original data, findings, or products of the mind.

Confidentiality/Trade Secrets: Act 55 of 1994 (MCL 390.1551-390.1557) addresses ownership of intellectual property created by university employees.

Common law intellectual property rights, particularly regarding unregistered trademarks or trade secrets, are generally protected under Michigan common law principles rather than a specific statutory MCL section. However, MCL 390.1554 (part of the Confidential Research and Investment Information Act) relates to protecting proprietary information and intellectual property.

Key Details regarding Intellectual Property in Michigan:

Common Law Trademarks: These rights arise through usage in commerce within a specific geographic area, allowing the first user to establish rights even without state or federal registration.

Trade Secrets: Protected under common law and the Michigan Uniform Trade Secrets Act (MUTSA), which protects confidential, proprietary information.

Inventions & Contracts: MCL 17.401 allows for state contracts involving inventions, discoveries, and patents, particularly for public health
These laws, in conjunction with common law principles (court-made law), protect unregistered marks and proprietary information.

Common law intellectual property rights in Michigan, such as unregistered trademark rights, are largely protected through unfair competition common law, while statutory rights are governed by the Michigan Trademark and Service Mark Act (MCL 429.31 et seq.), which mimics federal Lanham Act protections. Common law rights arise from use in

commerce, protecting against infringement, while MCL 429.31 allows registration for additional statutory protection.

Key Aspects of Intellectual Property Rights in MCL:
Trademarks/Service Marks: While common law protects unregistered marks, MCL 429.31-429.46 provides the statutory framework for registration, renewal, and infringement remedies, notes the State of Michigan.
Confidential Information: MCL 390.1551-390.1557(Confidential Research and Investment Information Act) defines intellectual property within university contexts and covers trade secrets.

Property Rights Defined: MCL 567.222 clarifies the definition of "property" as intangible personal property, which can encompass IP

Defines all pictures as intellectual property MCL750.395 deals with the prohibited use of an individual's image for commercial purposes without consent. Generally, pictures are protected under federal copyright law as original works of authorship.

Michigan Specific Law: MCL 750.395 relates to "misappropriation of a person's image or likeness," protecting the right of publicity.

Definition of Property: Under this section. An individual's likeness picture/image) is treated as a form of intellectual property that cannot be commercially used, published, or distributed without permission.

·General Protection: Pictures are also inherently protected as copyright-protected intellectual property.

In Michigan, an individual's likeness-including their photograph or image-is protected under both common law and statutory frameworks, often treated as a form of property that cannot be used for commercial purposes without consent. The "right of publicity" enables individuals to control the commercial exploitation of their likeness.

Key Aspects of Image Protection in Michigan:
Commercial Misappropriation (Right of Publicity): Using an individual's name, likeness, or image for a commercial purpose-such as in advertisements or to promote a product-without their consent violates their right of publicity, giving them a right to seek legal action.

Exceptions (First Amendment): The use of a person's likeness is protected if it is newsworthy or a matter of "legitimate public concern," such as in a news story or editorial content.

Common Law Right: Even without a specific statute in all scenarios, Michigan common law allows individuals to sue when their image is used to benefit another party without authorization.

Copyright Protection: Beyond the right of publicity, photographs themselves are protected under federal copyright law as original works of authorship, providing exclusive rights to the owner, who is generally the photographer.

Specific Statutory Considerations:
MCL 750.539d & 750.539j: Michigan law prohibits secretly recording, photographing, or sharing images of an unclad person or a person in their undergarments when there is a reasonable expectation of privacy, which is considered a felony.

Misappropriation of Image: Using a photo of someone on a website or in advertising to create a false impression of endorsement can lead to a lawsuit for violating their right to keep their likeness private.

Common Pitfalls and Penalties:
Unlicensed Images: Businesses using images found online (even from social media) without permission can be sued for copyright infringement, with potential statutory damages up to $150,000 per infringed work in cases of willful infringement.

Consent: Obtaining explicit permission from the person pictured is crucial for any commercial use of their likeness to avoid claims of violating their right of publicity

Unauthorized use of a person's picture is primarily governed by state-level rights of publicity laws, invasion of privacy torts (appropriation of likeness), and copyright law. Using someone's image for commercial purposes without consent is illegal, while personal misuse may violate privacy rights, especially if it involves false light or private, non-public settings.

Key legal concepts include:
Right of Publicity: Protects an individual's right to control and profit from the commercial use of their name, image, or likeness.

Invasion of Privacy (Appropriation of Likeness): A common law claim used when someone uses your name or face without permission for their own benefit.

False Light: A claim applicable if the unauthorized photo is used in a misleading or offensive way that damages your reputation.

Copyright Infringement: If you took the photo, you own the copyright; using it without permission violates federal copyright law.

Criminal Laws: Certain states, like Michigan, have statutes (e.g., MCL 750.539j) that make distributing private images without consent a felony

MCL 390.1554 (part of the Commercial Rehabilitation Incentive Act (CRIIA)) and related court discussions often identify "intellectual property" as exempt from disclosure,

frequently encompassing creative works, which can include images. Generally, original photographs and visual arts are protected as intellectual property under copyright laws.

Key Details Regarding Images as Intellectual Property:
MCL 390.1554(1)(a): Cited in legal contexts regarding the protection of information deemed "intellectual property," which can include proprietary visual content.

Copyright Protection: Original photographs and artistic images are protected by copyright, which is a form of intellectual property, from the moment of creation.

Other Related Laws: While specific MCL citations can vary based on context (e.g., commercial vs. Personal use), the "right of publicity" protects a person's image and likeness, treating it as a form of intellectual property when used commercially, as explained by Gorman & Williams

Under the Lanham Act, trademark registration is not required for protection, as common law rights arise from actual use in commerce. While the Supreme Court recently focused on registration restrictions (e.g.,Matalv.Tam, Iancu v. Brunetti), the foundational principle that unregistered, distinct marks are protectable under § 43(a) of the Lanham Act is established in cases like Two Pesos, Inc. v. Taco Cabana, Inc.

Key Supreme Court cases affirming or recognizing rights for unregistered marks under the Lanham Act include:

Two Pesos,Inc. v. Taco Cabana, Inc. (1992): The Court held that inherently distinctive trade dress is protectable under § 43(a) of the Lanham Act without proof of secondary meaning, affirming that unregistered marks can be enforced.

Qualitex Co. v. Jacobson Products Co. (1995): The Court confirmed that colors can act as trademarks and, if used in commerce, receive protection regardless of registration.
Wal-Mart Stores, Inc. v. Samara Brothers, Inc. (2000): While clarifying requirements for unregistered trade dress (requiring secondary meaning), the Court acknowledged that unregistered, distinctive product packaging is protectable under the Lanham Act.
Matal v. Tam (2017) and Iancu v. Brunetti (2019): These cases invalidated portions of the Lanham Act that restricted registration, emphasizing that the inability to register a mark does not prevent its use or common law protection.

These decisions highlight that federal registration provides advantages, but is not a prerequisite for protection against infringement

Several U.S. Supreme Court cases particularly Matal v. Tam (2017) and Iancu v. Brunetti (2019), implicitly confirm that trademark registration is not required for protection under the Lanham Act, as they struck down restrictions on registration based on First Amendment grounds allowing marks to exist even if they cannot pe registered.

15 of 24

Matal v. Tam (2017): The Court held that the Lanham Act's prohibition or 'registering "disparaging" marks violates the Free Speech Clause of the First Amendment, confirming that the inability to register does not extinguish `rights in the mark

The U.S. Patent & Trademark Office argued that the restriction is a protection against misappropriation of a reputation, not just a commercial brand

Key Supreme Court cases on consent and IP:

Vidal v. Elster, 602 U.S.  (2024): The Court held that the "names clause" in the Lanham Act, which prohibits registering a trademark containing a living person's name without their consent, does not violate the First Amendment. This protects a person's reputation and goodwill from unauthorized commercial use.

Harper & Row v. Nation Enterprises, 471 U.S. 539(1985): This case highlighted that the right of first publication is a crucial part of copyright protection, requiring consent before publishing another's confidential or copyrighted creative content (e.g., unpublished memoirs).

Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc. et al.,580 U.S._(2019):While focusing on "on sale" patent rules, the ruling highlights that, even with confidentiality agreements (implying a form of limited consent) between parties, selling an invention publicly can trigger the one-year bar, as a party cannot rely solely on private agreements to prevent sharing the technology's existence.
Van Buren v. United States, 593 U.S.  (2021): Although focused on the Computer Fraud and Abuse Act (CFAA), the Court ruled that "exceeds authorized access" applies to using permitted access to obtain information that a user is not entitled to take, emphasizing that access to, and sharing of, electronic IP requires authorization (consent).

Note: In the context of trademarks, the common law and modern law, including the 2024 Vidal case, have long maintained that a person has an inherent right to control the commercial use of their own name

Several U.S. Supreme Court cases, including Vidal v. Elster (2024), Harper & Row v. Nation Enterprises (1985), and Allen v. Cooper (2020), uphold that consent or legal authorization is required before using or sharing another's intellectual property (IP), covering trademarks, copyright, and digital access.

Key Supreme Court Rulings on IP Consent
Trademarks and Persona (Vidal v. Elster, 2024): The Court held that the Lanham Act's prohibition on registering trademarks that include a living person's name without their consent is constitutional. This upholds the "names clause," which restricts using someone's identity in commercial IP without their permission.

The US Supreme Court has confirmed that consent is required for using specific intellectual property, particularly personal names in trademarks and in cases of unauthorized publication of creative works. Key cases, such as Vidal v. Elster (2024), affirm that using another's name in a trademark requires their consent.

Copyrighted Material (Harper & Row v. Nation Enterprises, 1985): The Court ruled that taking copyrighted expression (in this case, unpublished manuscript quotes) without consent violates the copyright holder's rights, as it infringes on their creative control over the first public appearance of their work.

Copyright Infringement and State Immunity (Allen v. Cooper, 2020): While focusing on sovereign immunity, this case recognized that states generally cannot use someone's copyrighted material (like photos or videos) without consent, although the ruling limited how copyright owners can sue states for such infringements.

Digital Data Access (Van Buren v. United States, 2021): The Court defined "exceeds authorized access" under the Computer Fraud and Abuse Act (CFAA), ruling that accessing or sharing information from a computer system without authorization (i.e., without consent) is illegal.

While Haelen Laboratories vs. Topps Chewing Gum (1953) is not a Supreme Court case, it is the landmark ruling defining the "right of publicity" in federal court, which prohibits the unauthorized use of a person's likeness or voice for commercial purposes, reinforcing the need for consent to share identity-related IP.

The above-named Plaintiff(s) has not knowingly and/or willingly given any consent to any GOVEVERMENT AGENT/AGENCY/AGENCIES, COMPANY(IES), INDIVIDUALS PRIVATE OR OTHERWISE to use, duplicate, publish, print or the likes thereof the above-named Plaintiff(s)'private intellectual property. Any assumed, presumed, assumptions, presumptuous, inferred, implied or otherwise consent is hereby revoked, rescinded, cancelled, and/or terminated NUNC PRO TUNC.

### III)    DOES THE DEFENDANT(S) ACTION(S) CONSTITUTE AS VIOLATION OF RIGHTS OF PRIVACY

#### PLAINTIFF(S) SAYS: <u>YES</u>
#### DEFENDANT(S) SAYS: _____

The Supreme Court has interpreted several amendments as creating a "zone of privacy."

Key protections stem from the Fourth Amendment (unreasonable search and seizure), along with the First, Third, Fifth, Ninth, and Fourteenth Amendments of the **<u>united</u> States of America Constitution**.

Key Constitutional Amendments Pertaining to Privacy:
Fourth Amendment: Protects against unreasonable searches and seizures, forming the core of constitutional privacy.

First Amendment: Protects private beliefs, association, and anonymous speech.

Third Amendment: Prohibits the forced quartering of soldiers in homes, securing the privacy of the home.

Fifth Amendment: Protects against self-incrimination, allowing individuals to keep private information from the government.

Ninth Amendment: States that rights not specifically enumerated in the Constitution may still be retained by the people.

Fourteenth Amendment: The Due Process Clause has been interpreted to protect personal liberty and decisions regarding marriage, procreation, and family life.

The Supreme Court first officially recognized a constitutional right to privacy in Griswold v. Connecticut (1965), basing it on the "penumbras" (or shades) of these amendments Several Michigan Compiled Laws (MCL) pertain to privacy rights, covering areas from surveillance to personal records.

Key statutes include MCL 750.539d(1)(a) (felony surveillance/eavesdropping), MCL 330.1748(mental health records confidentiality), and MCL 257.208c(vehicle record privacy). Additionally, MCL 15.243 addresses privacy in public records.

Key Michigan privacy laws include:
Surveillance & Recording: MCL 750.539d(1)(a) makes it a felony to use devices for observing, recording, or photographing people in private places without consent.

Mental Health Records: MCL 330.1748 and MCL 330.1724 protect the confidentiality of mental health recipients, limiting disclosure and recording (photographs, audio) of patients. Data & Records: MCL 257.208c governs the disclosure of personal information in vehicle records, and MCL 205.827 covers personal data in tax administration.

FOIA Exemption: MCL 15.243 (Sec. 13) allows public bodies to refuse to disclose information if it is a "clearly unwarranted invasion of an individual's privacy".

Specific Acts: The Security Freeze Act MCL 445.2512 and the Body-Worn Camera Privacy Act 478 of 2012 also protect privacy.

The Privacy Act of 1974 (5 U.S.C. § 552a) is a landmark US federal law governing how executive branch agencies collect, maintain, use, and disclose personal information in systems of records. It protects individual privacy by granting rights to access and amend records, restricting disclosures without consent, and enforcing fair information practices on federal agencies.

Key Aspects of the Privacy Act of 1974

Purpose: To balance the government's need for information with the rights of individuals to be protected against unwarranted invasions of privacy. It was passed to prevent government abuse of personal data following disclosures of spying on citizens.

Access: Individuals can request to review their records maintained by federal agencies. Consent: Agencies generally cannot disclose records about an individual to other people or agencies without written consent.

Agency Requirements:
Relevance: Agencies must only maintain relevant and necessary information.

Transparency: Agencies must publish notice of their systems of records in the Federal Register (System of Records Notice-SORN).

Accuracy: Agencies must maintain records with appropriate accuracy, relevance, timeliness, and completeness to ensure fairness.

Exemptions: The Act contains twelve statutory exceptions (e.g., FOIA requests, civil/criminal law enforcement, statistical research) that allow the disclosure of records without consent

Article I, § 11 of the Michigan Constitution of 1963 provides the primary privacy protection against unreasonable searches and seizures, specifically amended in 2020 to include electronic data and communications. Article I, § 24 also guarantees crime victims the right to privacy throughout the criminal justice process.

Key Privacy Provisions in Michigan Constitution:

Article 1, § 11 (Searches and Seizures): Protects "person, houses, papers, possessions, electronic data, and electronic communications" from unreasonable searches and requires a warrant based on probable cause for electronic data.

Article I, § 24 (Rights of Crime Victims): Guarantees that crime victims have the right to be treated with respect for their dignity and privacy

MCL 15.243 Exemptions from disclosure; withholding of information required by law or in possession of executive office.

(1) A public body may exempt from disclosure as a public record under this act any of the following:
(a) Information of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy.

(b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:
(i) Interfere with law enforcement proceedings.
(ii) Deprive a person of the right to a fair trial or impartial administrative adjudication.
(iii) Constitute an unwarranted invasion of personal privacy.

## *CONCLUSION*

The filing of a UCC-1 financing statement constitutes public notice that a creditor has or may have a security interest (a lien) in a debtor's assets. It is a legally binding public record that notifies third parties-such as other potential lenders or creditors-that the specified assets are already pledged as collateral.

The US Supreme Court has confirmed that consent is required for using specific intellectual property, particularly personal names in trademarks and in cases of unauthorized publication of creative works. Key cases, such as Vidal v. Elster (2024), affirm that using another's name in a trademark requires their consent.

A man (or human creator) does not need to use their creation in commerce to be classified as intellectual property (IP). While trademark protection requires active "use in commerce", intellectual property rights for copyright (creative works) and patents (inventions) exist upon creation or filing, regardless of whether they are sold or used commercially.

Here are the key points regarding IP and "use in commerce":

Copyright Protection: Occurs automatically upon creation when the work is fixed in a tangible form (e.g., writing a book, taking a photograph), with no commercial requirement. Patents: Require an invention to be new and useful, but not necessarily actively sold in the market to gain protection.

Trademarks (The Exception): Require actual, legitimate use in commerce to be registered and protected.

Definition of IP: Generally defined as creations of the mind, including inventions, literary/artistic works, and symbols, which can be protected legally

The First Amendment does not provide a right to post someone else's intellectual property (IP) online, as copyright infringement is a recognized exception to free speech protections. Intellectual property laws protect owners from unauthorized reproduction or distribution, which can restrict speech without violating the Constitution.

Key points to understand include:

Copyrighted Content: Posting copyrighted text, images, or videos without permission violates the creator's rights, and courts have consistently rejected free speech defenses in such actions.

Exceptions & Fair Use: While distributing IP is generally prohibited, limited exceptions for fair use-such as commentary, criticism, news reporting, or parody-may be allowed, but this is a complex legal determination.

Private Platform Rules: Social media websites are private companies, not government entities, and are not bound by the First Amendment. They can restrict, remove, or ban users for posting unauthorized IP regardless of free speech arguments

Here is a breakdown of why this filing serves as public notice:

Publicly Searchable Record: UCC-1 statements are filed with a government office, typically the Secretary of State, and are searchable by the public, allowing creditors to see if a business's assets are already encumbered.

Perfection of Security Interest: While a security agreement creates the lien between the borrower and lender, the UCC-1 filing perfects it against third parties by making the interest public, which helps establish priority if the debtor defaults.

Preventing Double-Pledging: By appearing on a public, searchable database, UCC-1 filings warn other potential lenders not to accept the same assets as collateral, preventing borrowers from pledging the same property to multiple lenders.

Posting a photo taken by someone else without permission generally violates copyright law. The person who takes the photo owns the copyright, not necessarily the person in the photo. Using it without authorization, even on social media, can lead to legal liability, including statutory damages.

Infringement: Posting, sharing, or editing someone else's photo without their permission violates their exclusive rights.

Publicity & Privacy: Posting photos of people without their consent can also violate their "right of publicity" or "privacy rights," especially for commercial use or in private spaces.

Social Media: Posting photos found on social media without permission is illegal.

Risks: Violations can result in cease-and-desist letters, removal of content, and significant financial penalties
Does a photographer need the consent of the image owner to post a picture that it takes

A photographer generally owns the copyright to the images they take and does not need consent to post them for non-commercial, personal use, such as in a portfolio. However, for commercial purposes or if a contract states otherwise, consent from the subject or the client is required.

Key Considerations
Copyright Ownership: The person who takes the photo usually owns the copyright.

Model Release/Consent: While public photography is legal, a "model release" is usually needed to use photos commercially or in advertising.

Privacy: People in public spaces have limited rights to privacy, but displaying them in an embarrassing way could lead to legal issues
Marbury v. Madison (1803) is the landmark Supreme Court case establishing that any legislative or executive act contradicting the U.S. Constitution-the supreme law of the land-is null and void. This decision cemented the power of judicial review, enabling federal courts to declare laws unconstitutional.

Key Cases Regarding Constitutional Supremacy:
Marbury v. Madison (1803): Chief Justice John Marshall declared that "a law repugnant to the constitution is void,"

Amendment XIV of the united States of America Constitution is clear in its statement and its intent that NO LAW can be made to deny those rights as secured via the united States of America Constitution and any law(s) contradicting it is invalid through the power of judicial review. Marbury v. Madison (1803) is the landmark Supreme Court case establishing that any legislative or executive act contradicting the U.S. Constitution-the supreme law of the land-is null and void. This decision cemented the power of judicial review, enabling federal courts to declare laws unconstitutional. Marbury v. Madison (1803): Chief Justice John Marshall declared that "a law repugnant to the constitution is void." These cases reinforce that the Constitution is paramount, and any act violating it is deemed invalid, thereby any so-called law that denies the constitutionally protected rights of privacy is a void law, thereby any law that denies anyone the right(s) of privacy is a void law.

The above named Plaintiff(s)' has not given consent to anyone, (i.e. GOVERMENT AGENT/AGENCY/AGENCIES,CORPORATIONS, Individual(s), Private or otherwise) to use in any shape, form,[n]or fashion any of the Private Intellectual Property belonging to the above named Plaintiff(s), has perfected a security interest in all property, to include but not limited to said name of ROOSEVELT LASHAWN WILLIAMS and any and all derivatives therefrom/thereof as witnessed by the Public Notice filed with the UNIFORM COMMERCIAL CODE DIVISION OF THE STATE OF MICHIGAN, has given due and sufficient notice to the unauthorized use and said penalties for such action(s) and has requested as permitted by law that all parties cease-and-desist any further unauthorized uses of private intellectual property and to remove said property from all data base system(s) to no avail.

## RELIEF REQUESTED

The herein Complaint involves issues of violation of CONSTITUTIONAL rights to which pursuant to Article III §I of the united States of America Constitution, this being an Article III COURT, gives this HONORABLE COURT Authority/jurisdiction to GRANT the herein sought RELIEF. Satisfying 28 U.S.C. APP Fed. R. Civ. Rule 8.

A). As the DEFENDANT(S) were given due and sufficient notice to the herein stated violation(s) and refused to take corrective action(s) and continuously allow such FACEBOOK META pages as "Citizen To Police Calhoun" and the FACEBOOK META page/post attached hereto to violate Law and Policy, making said act(s) of malicious and willful intent, that enforcement of the said attached Article I §§ 8 and 10 of the *united States of America Constitution* protected   COMMON LAW COPYRIGHT NOTICE be rewarded as Punitive Damages per person per day. (See EXHIBIT (F) "COMMON LAW COPYRIGHT NOTICE ")

B). A MANDATORY INJUCTION be issued directing the DEFENDANT(S) to remove all of the above-named Plaintiff(s)' Intellectual Private Property from their DATA BASE system, further instructing the DEFENDANT(S) to follow and enforce their Privacy Policies and to cease and desist in any further unauthorized use of the Plaintiff(s)' Private Personal Intellectual Property.

C). A PROHIBITORY INJUNCTION be issued to the DEFENDANT(S) from any further unauthorized use of the above-named Plaintiff(s) Intellectual Private Property

D). Compensatory Damages allowed by law.

Along with any other remedies this HONORABLE COURT deems just and fit, to include but not limited to all court cost and fees.

Signature Sui Juris (Trustee) All Rights Reserved
Roosevelt-Lashawn of the Williams Family Sui Juris

24 of 24

ROOSEVELT L. WILLIAMS (ESTATE)
% 554 BOYNTON AVE
BENTON HARBOR MI (49022)
    Under Necessity



CPU

**U.S. POSTAGE IMI**
**$4.44**
FCMF  RDC 99
Orig: 49014
Dest: 49503    8W
05/01/26
2000051660    02

WESTERN DISTRICT OF MICHIGAN
CLERK OF THE COURT
399 FEDERAL BUILDING
110 MICHIGAN STREET N. W
GRAND RAPIDS MICHIGAN 49503